UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br> v.<br>TROY P. REGAS,<br><br>    Defendant. | Case No. 3:20-cv-00218-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

Plaintiff the United States of America sued Defendant Troy P. Regas to reduce to judgment federal income tax assessments against him from tax year 2006. (ECF No. 1.) Before the Court is the United States' motion for summary judgment (ECF No. 47 ("Motion")), along with Regas' cross motions for summary judgment based on the statute of limitations (ECF No. 49) and his argument that he does not owe a tax debt to the Internal Revenue Service ("IRS") (ECF No. 50).[1] Because the Court finds that the United States timely filed this case, Regas' argument that he does not owe the IRS anything is unpersuasive, and as further explained below, the Court will grant the Motion and deny Regas' cross-motions.

**II. BACKGROUND**

The following facts are undisputed unless otherwise noted. Mr. Regas made a lot of money in 2006 from buying and selling water rights at a substantial profit. (ECF No. 53 at 13.) He used the money—in pertinent part—to purchase a property known as the Peri Farm. (*Id.*; *see also* ECF No. 50 at 28-36 (containing a deed to the property).) When he filed his 2006 taxes, Regas self-reported that he owed $575,684.00, but only paid $20,000

---

[1]The Court also reviewed the various responses and replies. (ECF Nos. 51, 52, 53, 54, 55, 56.)

of that amount. (ECF No. 47-25 at 2; ECF No. 47-24 (documenting the amount of taxes he paid for the 2006 tax year).) The IRS issued an assessment matching the amount Regas self-reported on November 26, 2007. (ECF No. 47-24 at 2.) The IRS further assessed late payment penalties and interest against Regas and demanded that he pay the rest of the amount he owed. (ECF No. 47-23 at 2-3.)

Regas did not pay the full amount he owed for tax year 2006. However, according to the United States, he has made some $53,959.54 in payments in the intervening years. (ECF No. 47-24; *see also* ECF No. 47-18 at 4-8.) Some of these payments were because the IRS garnished Regas' wages. (ECF No. 47-24 at 5-10.) The IRS has calculated that the outstanding balance for the tax and related assessments for Regas' 2006 tax year, as of March 1, 2024, is $1,342,969.12, plus statutory interest accruing thereafter. (ECF No. 47-23 at 6.)

Meanwhile, Regas took out an $800,000 loan from International Investments LLC ("International") secured by a deed of trust recorded against the Peri Farm in 2008. (ECF No. 47-2 at 9-10; *see also* ECF Nos. 47-7, 47-8.) In 2008 and 2009, Regas used that money to attempt to develop an RV park on a portion of the Peri Farm and negotiated with the Nature Conservancy to sell them another 40 acre parcel of the Peri Farm property. (ECF No. 47-2 at 9-11.) Regas never opened an RV park on the property or sold a portion of it to the Nature Conservancy. (*Id.*)

Regas filed a Chapter 11 bankruptcy case in 2011. (ECF No. 47-11.) The IRS filed a proof of claim about the tax debt also at issue in this case in Regas' bankruptcy case. (ECF No. 47-21.) In September 2012, International filed a motion to lift the bankruptcy stay to enforce its lien against the Peri Farm. (ECF No. 47-15.) In November 2012, the Bankruptcy Court granted International's motion (ECF No. 47-16), and later that same month, the Bankruptcy Court lifted the stay and closed the bankruptcy case (ECF No. 47-17).

The United States filed this case in 2020. (ECF No. 1.) The United States obtained a clerk's default against Regas in 2022. (ECF No. 20.) After the United States moved for

default judgment (ECF No. 21), Regas wrote the Court a letter (ECF No. 22) that the Court construed as a request for an extension of time to file a response to the motion for default judgment and granted it (ECF No. 23). On the date set for him to respond to the motion for default judgment, Regas instead filed an answer. (ECF No. 24.) The Court accordingly denied the United States' motion for default judgment. (ECF No. 33.) The parties then timely filed the pending motions. (ECF Nos. 47, 49, 50.)

Within the last year, Regas has retained an enrolled agent and—as further addressed below—has been having that enrolled agent prepare amended tax returns in an attempt to carry back losses equivalent to the purchase price of the Peri Farm plus the $800,000 loan from International from first tax year 2008 and later tax year 2011. (ECF No. 47 at 6-7 (describing 2008 carryback attempt); ECF No. 50 (relying on the 2011 carryback attempt).)

**III.    DISCUSSION**

The parties' cross-motions raise overlapping arguments, so the Court analyzes those arguments instead of serially addressing each motion, beginning with the statute of limitations argument, and then turning to Regas' shifting arguments that he owes no money to the IRS because he can carry back some losses to 2006.

But before the Court gets to those specific arguments, the Court finds that the United States has proffered evidence sufficient to meet its initial burden that Regas owes $1,342,969.12 on the tax and related assessments made for his 2006 year, together with interest accruing after March 1, 2024. (ECF No. 47 at 11.) To start, Regas himself filed a 2006 tax return back in 2007 that stated he owed $575,684.00. (ECF Nos. 1 at 2-3, 47-25 at 2.) Regas has not paid the full amount of tax due that he reported on that return. (ECF No. 47-24 (showing on Form 4340 that he made a $20,000 payment at the time he filed his returns and then later made subsequent payments when the IRS levied against his wages, but those payments did not fully cover his tax liability, much less the penalties, late fees, and interest assessed against him bringing the total as of March 1, 2024 to some $1.3 million).) *See also Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)

1  (noting the United States Court of Appeals for the Ninth Circuit's holding in a prior case
2  that a, "Form 4340 is admissible as a public record even though generated by a
3  computer[,]" "is probative evidence in and of itself[,]" and "in the absence of contrary
4  evidence, [is] sufficient to establish that notices and assessments were properly made."
5  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). And like the Form 4340
6  submitted by the United States, the United States also submitted an IRS INTSTD form
7  that also states Regas owes $1,342,969.12 on the tax and related assessments for his
8  2006 year. (ECF No. 47-26 at 1.) *See also United States v. Gonzales for Est. of Gonzales*,
9  323 F. Supp. 3d 1119, 1130 (N.D. Cal. 2018) (finding that an IRS "Form INTSTD"
10 corroborated the amount due shown on a form 4340). Taken together, the United States'
11 proffered evidence carries its initial burden in seeking summary judgment. *See Zoslaw v.*
12 *MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (stating that the moving party bears
13 the initial burden of showing that there are no genuine issues of material fact).

14    Regas offers evidence to support his two arguments that he raises both in
15 opposition to the United States' Motion and in support of his two cross-motions, but the
16 evidence he presents does not create any genuine disputes of material fact. Though
17 before the Court addresses Regas' specific arguments, the Court notes he also includes
18 a general plea under either the Court's inherent powers or the All Writs Act, 28 U.S.C. §
19 1651(a) to "let this matter end here and now[.]" (ECF No. 53 at 8-9.) He seems to suggest
20 the Court should somehow discharge his tax debt but does not proffer any legal
21 authorities or explanation as to how the Court could do so. Moreover, to the extent Regas
22 relies on the All Writs Act, *see id.*, that law has traditionally "been used to confine an
23 inferior court to the lawful exercise of its jurisdiction, or to compel it to exercise its authority
24 when it has the duty to do so." *Zegzula v. United States*, 954 F.2d 728 (9th Cir. 1992).
25 And the party seeking the writ bears the burden to show that its right to issuance of the
26 writ is clear and undisputable. *See id.* Regas has not carried that burden, nor does his
27 request fit into either of the categories described above. *See generally id.* (rejecting
28 petition by pro se litigant under All Writs Act to stop the IRS' criminal investigation of him

for neither filing tax returns nor paying taxes regarding money he earned from a dental practice, affirming the district court's decision not to issue a writ of prohibition, affirming the district court's sanctions award against the pro se litigant, and further sanctioning the pro se litigant for filing the appeal). The Court accordingly denies his request to 'let the matter end.' And with that, the Court turns to Regas' more specific arguments.

### A.  Statute of Limitations

Normally, the United States has ten years from the date of the earliest assessment to file suit to collect an outstanding tax liability. *See* 26 U.S.C. § 6502(a)(1). Here, there is no dispute that the assessment date is November 26, 2007. (ECF Nos. 49 at 2, 51 at 2.) The parties also agree the limitations period was extended during Regas' bankruptcy case and 180 days thereafter, for a total of 803 days. (ECF Nos. 1 at 4, 24 at 2, 47 at 11, 49 at 2-3, 53 at 5.) However, the United States also alleges and argues the statute of limitations was tolled while an installment agreement between Regas and the IRS was pending, plus 30 days after that—rendering the United States' filing of this suit timely. (ECF Nos. 1 at 4, 47 at 11, 51 at 4.) *See also* 26 U.S.C. § 6331(k)(2) (providing that the IRS may not levy while an offer of an installment agreement is pending, or for 30 days after the IRS rejects the offer); 26 U.S.C. § 6331(i)(5) ("The period of limitations under section 6502 shall be suspended for the period during which the Secretary is prohibited under this subsection from making a levy."); 26 U.S.C. § 6503(a)(1) (same). Regas counters that the United States' suit was not timely filed because he either does not remember submitting, or affirmatively did not submit, an installment agreement request. (ECF No. 53 at 5.) Regas further argues that while a record of the request for an installment agreement exists on the Form 4340 at issue in this case, he does not believe the United States ever produced any underlying documents to corroborate what the form says and the fact that he filed a declaration saying he never submitted a request for an installment agreement at least creates a material dispute of fact. (*Id.* at 5-7.) The Court agrees with the United States.

///

Regas certainly attempts to raise a factual dispute, but he does not create a genuine, material one. Both he and the United States rely on the Form 4340 about his 2006 taxes, which states that an installment agreement was pending from December 19, 2007, to March 5, 2008. (ECF Nos. 49 at 1-2, 8, 47-24 at 2.) This Form 4340 "is probative evidence in and of itself[,]" and "in the absence of contrary evidence, [is] sufficient to establish" that an installment agreement was pending during those dates. *Hansen*, 7 F.3d at 138. While Regas says that he could not locate the underlying document from the discovery the United States produced to him that reflects this entry, he does not proffer any contemporaneous document suggesting that the entry in the Form 4340 is inaccurate. (ECF No. 53 at 5-7.) And while he submitted a declaration with his response to the United States' Motion (*id.* at 13 (denying he ever requested or entered into an installment agreement)), this declaration is not entitled to any weight because it is self-serving and inconsistent with both the Form 4340 upon which Regas otherwise heavily relies and says is accurate, and the Answer he filed earlier in this case, in which he stated he could not recall whether he had proposed an installment agreement. (*Id.*; *see also* ECF No. 49 at 2-3, 8 (relying upon the Form 4340 that states an installment agreement was pending during those dates); ECF No. 24 at 3 ("does not recall").)

Indeed, in *Hansen*, the Ninth Circuit found that a declaration submitted by the taxpayers denying that they ever received a notice of assessment and demand of payment did not create a dispute of material fact with contrary representations in a Form 4340 that the notice had been sent because it did not directly contradict the representation in the Form 4340 that notice was sent. *See* 7 F.3d at 138. Similarly, here, Regas' shifting representations that he does not recall making an installment agreement offer in his Answer (ECF No. 24 at 3) or did not make one in the declaration he submitted supporting his opposition to Plaintiff's Motion (ECF No. 53 at 13) do not create a dispute of material fact because they do not constitute "specific facts" contradicting the entries in the Form 4340 saying that he did (ECF No. 47-24 at 2). In addition, the fact that an installment agreement was pending between December 19, 2007, and March 5, 2008, is further

1  corroborated by an account summary document Regas himself attached to his motion for
2  summary judgment based on no taxes due. (ECF No. 50 at 123.) Moreover, Regas
3  himself 'incorporates by reference' the Form 4340 into his motion for summary judgment
4  on the statute of limitations (ECF No. 49 at 1-2), the version of the form he attached to
5  that motion is the same as the version the United States proffered with its Motion, and
6  identically notes that a request for installment agreement was pending during the exact
7  same time period (*Id.* at 8).

8  In sum, the Court finds that an installment agreement was pending from December
9  19, 2007, to March 5, 2008. This extended the pertinent statute of limitations such that
10 this case was timely filed. The Motion is accordingly granted to that extent, and Regas'
11 motion for summary judgment on statute of limitations is denied. (ECF No. 49.)

12 **B.   Carryback**

13 Regas otherwise attempts to oppose summary judgment by making a shifting
14 carryback argument based on recently prepared, amended tax forms. (ECF Nos. 47 at 2
15 ("Recently, the defendant produced an amended return that he signed on January 5,
16 2024, through which he is attempting to carryback an alleged loss from his 2008 year to
17 try to eliminate the tax due that he reported on his filed 2006 return."), 50 (relying on an
18 amended 2006 tax return in conjunction with a newly-prepared tax return for 2011), 53 at
19 7-8 (responding to the Motion in part by explaining how he submitted an amended 2006
20 tax return to the IRS two days before the United States filed its Motion along with some
21 other documents attempting to carryback a loss from 2011), 52 at 3 (explaining the
22 chronology of Regas' attempted carryback first from 2008 and then from 2011 and stating,
23 "[i]t is unclear, but the defendant may have abandoned the first amended return as a
24 defense in this case."), 54 at 2-4 (arguing the Court should reject the carryback argument
25 even in light of the second amended return attempting to carryback losses from 2011),
26 56 at 4 ("Sanctions should not be imposed and Defendant should be allowed to proceed
27 with the 2011 return, which was filed with the IRS 3/18/2024.").) Construing all of these
28

filings together in light of both Regas' nominally pro se status[2] and the chronology (because the 2011 carryback emerged after the 2008 carryback when the Court considers the briefing in chronological order and Regas asks the Court to consider it instead of the 2008 carryback argument), the Court construes Regas as arguing that he suffered a loss in 2011 regarding the property known as the Peri Farm that he should be permitted to carry back to 2006, meaning he does not owe any taxes for tax year 2006. (ECF No. 56 at 4-7.) This argument is based on some documents Regas submitted to the IRS two days before the United States filed its Motion and did not disclose in discovery. (ECF No. 53 at 7-8.)

The United States counters these contentions with several, alternative arguments. The United States first argues Regas cannot rely on the 2011 documents under Fed. R. Civ. P. 26(e) and 37(c)(1) because he did not disclose them in discovery or update his discovery responses to reflect his new defense based on a carryback from 2011. (ECF No. 52 at 5-6.) The United States then argues, to the extent that Regas had a taxable loss from his Peri Farm investment, that loss did not occur in 2011 because he still owned it then and was submitting various documents under penalty of perjury to the Bankruptcy Court saying that he owned it, it was worth over $10 million, and he was deriving income from it. (*Id.* at 7-8.) The United States next argues that, even assuming Regas had a taxable loss from the Peri Farm in 2011, he has not shown entitlement to carry that loss back to 2006. (*Id.* at 9-10.) And the United States finally argues Regas is not entitled to a refund in any event, because he waited too long to seek one. (*Id.* at 10-11.)

Regas concedes he did not disclose the documents upon which he relies during discovery or update his discovery responses, but argues he had no nefarious intent, his timing was the product of his lack of sophistication, and thus basically asks for forgiveness. (ECF No. 56 at 1-4.) Regas also concedes his bankruptcy was active in 2011 and his creditors did not foreclose on the Peri Farm until after the Bankruptcy Court lifted

---

[2]Regas has an attorney helping him who claims that she does not represent him. (*See, e.g.*, 56 at 9.)

the automatic stay in 2012, but argues they had their 'ducks in a row' to foreclose in 2011. (*Id.* at 4-5.) Regas further argues he is entitled to carry a loss back five years because he asserts—without citation to any supporting evidence—that he was conducting some farming activities on the Peri Farm while he owned it, though he was also seeking to develop a RV park on it, renting out some flat land for truck parking, and trying to sell some of it to the Nature Conservancy. (*Id.* at 6.) Regas goes on to argue he might have included the wrong loss amount in the 2011 documents he is now relying on, states it is arguable that the financial crisis of 2008 caused him a casualty loss because it caused him to lose his money and assets, states he is 'not married to' his apparent request for a refund on his 2006 taxes, and concludes by asserting that the Court should resolve this case based on his statute of limitations argument. (*Id.* at 7-8.)

But the Court has already rejected Regas' statute of limitations argument for the reasons described above. And Regas otherwise seems to concede the validity of the United States' arguments regarding this carryback issue. Regas is further not necessarily entitled to have the Court draw all reasonable inferences in his favor as the nonmoving party because he cross-moves for summary judgment on his carryback argument of no debt owed as well. The Court will nonetheless generously construe Regas' arguments as presenting some opposition to the United States' arguments on the carryback issue and evaluates them below.

The United States is entitled to summary judgment in this case despite Regas' attempts to carry back losses from 2011. First, Regas does not dispute that he never produced the documents supporting his 2011 carryback argument in discovery, nor did he disclose them to the United States until he moved for summary judgment on them. (ECF No. 56 at 1-4.) This means he cannot rely on them in seeking summary judgment unless his failure to properly disclose them during discovery "was substantially justified or is harmless[.]" Fed. R. Civ. P. 37(c)(1). And Regas bears the burden to show it was. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008). Regas appears to implicitly address the 'substantially justified' factor by arguing he is unsophisticated, he

1  thought the bankruptcy proceedings discharged his tax debt, and because it took him a
2  while to find a tax preparer to help him respond to the United States' contentions in this
3  case. (ECF No. 56 at 1-4.) However, he does not persuasively explain why it took him
4  and his tax preparer Kenneth Jacks close to a year to prepare the 2011 documents, nor
5  why Jacks first prepared an attempt to carry back the same losses from 2008 that Regas
6  has now abandoned. Moreover, Regas does not persuasively explain why he did not try
7  to carry back these losses in 2008 or in 2011 before filing bankruptcy—or in any of the
8  intervening years. Thus, while Regas offers some justification, it is difficult for the Court
9  to say his delay and nondisclosure of documents supporting one of his two defenses was
10 substantially justified.

11 As to harmlessness, Regas appears to argue that the IRS, the Department of
12 Justice, and the federal government more broadly have essentially unlimited resources,
13 so no action or omission on his part could really harm them. (*See generally id.*) But this
14 argument about resources does not speak to the prejudice the United States experiences
15 in having to address a new defense after filing its Motion—and after the pertinent
16 deadlines had passed. (ECF No. 52 at 6 (arguing this is the harm it suffered).) And
17 because Regas bears the burden to show his failure to timely disclose the documents
18 underlying his defense or update his discovery responses was substantially justified or
19 harmless, the United States is not even "required to articulate how [it] would be prejudiced
20 by" Regas' nondisclosure. *Torres*, 548 F.3d at 1213. But here, the United States does
21 articulate understandable prejudice. The Court overall finds Regas' failure to disclose the
22 documents he relies on in making his 2011 carryback argument neither substantially
23 justified nor harmless, so finds he cannot rely on them to oppose summary judgment.

24 And in the alternative, even if the Court were to consider Regas' 2011 carryback
25 argument on its merits, the Court finds it unpersuasive for the reasons proffered by the
26 United States—mainly because Regas still owned the Peri Farm in 2011. As noted,
27 Regas concedes his creditors did not foreclose on the Peri Farm in 2011 because the
28 automatic bankruptcy stay was in place. (ECF No. 56 at 4-6.) He instead argues without

citation to evidence or pertinent legal authority that he was effectively no longer the owner of the Peri Farm by the time he filed for bankruptcy because he had defaulted on a deed of trust with onerous terms and International had its 'ducks in a row' to foreclose once his bankruptcy case ended and International was otherwise able to. (*Id.*)

This argument is also inconsistent with other evidence before the Court showing that Regas continued to own the Peri Farm in 2011 that Regas had filed on his behalf in his bankruptcy case, and then confirmed in a deposition in this case. In a declaration signed by Regas and submitted to the Bankruptcy Court in October 2012, Regas estimated that the Peri Farm was worth $5 million and stated that he was receiving $2500/month for renting a portion of it out for truck parking.[3] (ECF No. 47-14 at 2, 5.) He confirmed this in his deposition in this case. (ECF No. 47-2 at 15 (confirming as well that the 'Storey County property' valued at $5 million in the bankruptcy document is the Peri Farm).) Later in October 2012, Regas similarly stated that he still owned the Peri Farm and included it in a list of properties he owned and valued at some $13 million. (ECF No. 47-12; *see also* ECF No. 47-2 at 12-13 (confirming this in a deposition in this case).) This evidence tends to show that Regas still owned the Peri Farm property in 2012. And Regas does not present any contradictory, "specific evidence, through affidavits or admissible discovery material, to show that [a] dispute exists[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The Court thus finds it undisputed on the record before it that Regas continued to the own the Peri Farm past 2011, and at least into 2012.

Because Regas still owned the Peri Farm in 2011, he cannot have suffered a deductible loss in 2011. *See Guffey v. United States*, 339 F.2d 759, 761 (9th Cir. 1964) (finding that the taxpayers did not suffer a deductible loss when they thought they sold their house in 1951, but the purchasers later sued them for recission of the contract after

---

[3]The Court takes judicial notice of the filings from Regas' bankruptcy case to the extent necessary considering that Regas confirmed the accuracy of these filings during his deposition in this case. (ECF No. 47-2 at 12-15.) *See also In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (affirming decision to take judicial notice of the underlying records from a bankruptcy case and noting that, "all of the facts are supported by the record of the underlying bankruptcy matter[.]").

they found dry rot and returned title to the taxpayers, so the taxpayers had to sell it a second time for a lower price in 1954, noting as to the 1951 sale, "if it results in a loss, does not result in a deductible loss."); *United States v. Mattison*, 273 F.2d 13, 22 n.11 (9th Cir. 1959) ("since the taxpayer did not dispose of [some assets] during the tax year there had been no taxable event"). The Court accordingly rejects Regas' carryback argument.

In sum, the United States is entitled to summary judgment in this case and grants its Motion in full. (ECF No. 47.) Regas' motion for summary judgment contending he owes the IRS nothing is correspondingly denied. (ECF No. 50.)

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the United States' motion for summary judgment (ECF No. 47) is granted.

It is further ordered that Regas' motion for summary judgment based on the statute of limitations (ECF No. 49) is denied.

It is further ordered that Regas' motion for summary judgment based on no debt owed (ECF No. 50) is denied.

It is further ordered that Regas owes the United States $1,342,969.12 on the tax and related assessments made for his 2006 tax year, together with interest accruing after March 1, 2024.

The Clerk of Court is directed to enter judgment accordingly—in the United States' favor—and close this case.

DATED THIS 17th Day of December 2024.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE